<u>NOTE PURCHASE AND ASSUMPTION AGREEMENT</u>

First NBC Bank, (*"Seller"*), and Tyrone Legette (*"Buyer"*), enter into this **NOTE PURCHASE AND ASSUMPTION AGREEMENT** (this *"Agreement"*) on July 15, 2016 (the *"Effective Date"*).

<u>RECITALS</u>

A.     Seller, as lender, and People's Community Subsidiary, Inc., a Louisiana Corporation, domiciled in Jefferson Parish, Louisiana, as borrower ("People's Community"), entered into a loan whereby Seller agreed to loan to People's Community the principal amount of $2,000,000.00 or such lesser sum as may be actually advanced thereunder  (the *"Loan"*), which is evidenced by, among other things, a Promissory Note dated November 20, 2014 (the *"Note"*), Business Loan Agreement, Commercial Security Agreement, Acknowledgment of Existing Multiple Indebtedness Mortgage and is secured by, among other things, a Multiple Indebtedness Mortgage dated September 27, 2013, granted by People's Community to Seller and recorded on September 30, 2013, as Instrument No. 11348601, MOB 4591, folio 647, Official Records of Jefferson Parish, Louisiana (the *"Mortgage"*), which encumbers certain real estate located in Jefferson Parish, Louisiana, as more particularly described in the Mortgage, (the *"Property"*).

B.     The loan is further secured by an Assignment of Leases dated September 27, 2013, and recorded on September 30, 2013, as Instrument Number 11348602, MOB 4591, folio 649, Official Records of Jefferson Parish, Louisiana (the *"Assignment of Leases"*).

C.     A portion of the obligations of People's Community under the Loan is guaranteed by Legette Construction, Inc. (*"LC"*), and Tyrone Legette, an individual (together with LC, *"Guarantors"*), in the Guaranties dated September 27, 2013 and November 20, 2014 (the *"Guaranties"*). Guarantors executed and delivered the Guaranty to Seller to induce Seller to make the Loan.

D.     The Note, the Mortgage, the Assignment of Leases, the Guaranties, and all loan documents executed in connection therewith are herein defined as the *"Loan Documents"*.

E.     As of the Effective Dated, the outstanding principal balance of the Loan is $2,002,000.00.

F.     Seller has now agreed to sell and Buyer has now agreed to purchase all of Seller's right, title and interest in and to the Note, Mortgage, Assignments of leases and Rents, and all loan documents (collectively, the *"Subject Loan Documents"*) on the terms and conditions set forth in this Agreement.

<u>AGREEMENT</u>

**NOW, THEREFORE**, in consideration of the foregoing premises, the mutual agreements and undertakings that follow; and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer agree as follows:

1.   **Agreement to Purchase and Sell; Purchase Price.**

   **1.1 Agreement to Purchase and Sell.** Subject to and in accordance with the terms and conditions of this Agreement, Seller shall sell, assign transfer and convey to Buyer on the Effective Date, and Buyer shall purchase, accept and assume on the Effective Date, all rights, titles, obligations and interests of Seller, as of the Effective Date, in, to and under the Subject Loan Documents.

   **1.2 Purchase Price.** As the purchase price for the Subject Loan Documents, Buyer shall pay to Seller a total of $2,002,000.00 (the *"Purchase Price"*).

2.   **Closing.** The closing shall occur on the Effective Date at the offices of Sovereign Title, Inc. (*"Escrow Agent"*), at 1601 Belle Chasse Highway, Suite 203, Gretna, Louisiana 70056 or other such place designated by Buyer and Seller. On the Effective Date, Buyer shall deliver to Escrow Agent the Purchase Price in immediately available funds by wire transfer or Cashier's

Check, such funds to be transmitted to Seller upon closing. On the Effective Date, Seller shall sell, assign, transfer and convey Seller's right, title and interest in and to the Subject Loan Documents to Buyer without representation, warranty or recourse, except as otherwise provided in Section 5.1, all in accordance with and subject to the provisions of this Agreement.

3. **Transfer of the Subject Loan Documents.**

> 3.1 **Delivery of Certain Documents.** Upon confirmation of receipt of the Purchase Price by wire transfer or Cashier's Check of collected and immediately available funds, Seller shall deliver to buyer, though Escrow Agent, the following (the *"Closing Documents"*).

>> (i) The original Note;

>> (ii) Originals or copies of the following Loan Documents that Seller has located in its files: the Mortgage; the Assignment of Leases and Rents; Business Loan Agreement, Commercial Security Agreement, and Acknowledgment of Existing Multiple Indebtedness Mortgage;

>> (iii) An executed assignment of the Subject Loan Documents, in substantially the form attached hereto as Exhibit C.

>> (iv) Terminations of (i) the Guaranty.

> 3.2 **Limitation on Assets Sold.** Notwithstanding anything to the contrary contained herein, Buyer acknowledges and agrees that Seller is not assigning, transferring or otherwise providing to buyer any rights in or to anything other than the Subject Loan Documents. Buyer further understands and agrees that Seller is retaining any and all rights arising prior to the Effective Date under any indemnification or reimbursement provisions contained in the Note or the Mortgage.

> 3.3 **Assumed Obligations.** Subject to the terms and conditions of this Agreement, Buyer shall, as of the Effective Date, assume and comply with the terms and conditions of the Subject Loan Documents, applicable to the lender thereunder, if any, arising on or after the Effective Date (collectively, the *"Assumed Obligations"*).

> 3.4 **Affirmative Acknowledgements.** Buyer acknowledges and agrees that it will not look to Seller for the payment of the Loan under the Subject Loan Documents. Buyer hereby acknowledges and agrees that, excepting only as is expressly provided for in Section 5.1, Buyer is purchasing the Subject Loan Documents on an "as-is, where-is" basis, and without recourse. Buyer has performed such due diligence that it deems necessary and appropriate in connection with the purchase and assignment contemplated hereunder. Buyer assumes all risk, including risk of loss, counterclaims, defenses and delays, and the cost of enforcement of claims with respect to the Subject Loan Documents, and Buyer understands that its enforcement efforts in respect of the Subject Loan Documents may be adversarial in nature and subject to actual or potential claims and defenses by People's Community arising after the Effective Date. It is understood that, for collection of the loan under the Subject Loan Documents, Buyer shall look solely at People's Community, the Mortgaged Property and other Collateral. In addition, Buyer acknowledges that, as of the Effective Date, one or more defaults exist with respect to the Loan and that such defaults may include, without limitation, payment defaults.

> 3.5 **Excluded Documents.** For the avoidance of doubt, Seller shall not sell, transfer, assign or convey to Buyer any right, title or interest whatsoever in any of the Guaranty, or other documents in connection with the Loan except the Subject Loan Documents and that the Closing Documents are the only documents that Buyer shall receive at closing. Notwithstanding anything to the contrary contained herein.

4. **Representation and Warranties of Buyer.** Buyer hereby represents and warrants as follows:

**4.1    Organization, Existence, Etc.** Buyer is duly formed or organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization, and is registered or qualified to conduct business in all other jurisdictions in which the failure to be so registered or qualified would materially and adversely affect the ability of Buyer to perform its obligations hereunder.

**4.2    Authority and Enforceability, Etc.** Buyer has the power and authority to execute, deliver and perform all terms under this Agreement and all related documents to which it is a party and has taken all necessary action to authorize such execution, delivery and performance. Buyer's execution of this Agreement and its performance of its obligations hereunder are not subject to any further approval, vote or contingency from any person or committee. Assuming due authorization, execution and delivery by Seller, this Agreement and all obligations of buyer thereunder are the legal, valid and binding obligations of Buyer, enforceable in accordance with the terms of this Agreement, except as such enforcements may be limited by bankruptcy, insolvency, reorganization or other laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

**4.3    No Pending Litigation.** Buyer represents that there is no pending or threatened litigation, administrative ruling or investigation by any federal or state agency having jurisdiction over Buyer which, if determined adversely to buyer, would have a material adverse affect on Seller's execution, delivery, or enforceability of this Agreement.

**4.4    Conflict with Existing Laws or Contracts.** The execution and delivery of this Agreement and the performance by Buyer of its obligations thereunder will not conflict with or be a breach of any provision of any law, regulation, judgment, order, decrees, writ, injunction, contract, agreement or instrument to which buyer is subject.

**4.5    Decision to Purchase.** Buyer has entered into this Agreement solely upon its own independent investigation and credit analysis and is not relying upon any information supplied by or any representations made by Seller with respect thereto, other than the limited representations and warranties of Seller contained in Section 5.1 hereof. Buyer has made such independent investigation as Buyer deems to be warranted into the nature, title, attachment, perfection, priority, validity, enforceability, collectability, and value of the Subject Loan Documents, the title, condition and value of any collateral, and all other facts it deems material to the purchase of the Subject Loan Documents.

**4.6    No Reliance.** In entering into this Agreement, buyer has not relied upon any oral or written information from the Seller or any of its respective employees, agents, attorneys or representatives, other than the limited representations and warranties of Seller contained in Section 5.1 hereof.

**4.7    Buyer a Sophisticated Investor.** Buyer is a "sophisticated investor" (as that term is used in regulations promulgated under the Securities Act of 1933).

**4.8    Information True and Correct, Full Disclosure.** The information provided by Buyer in connection herewith was true and correct on the date provided and did not omit any information necessary to the accuracy and full disclosure of information provided and such information is accurate and complete on the date hereof except as buyer has otherwise disclosed in writing to Seller prior to the date hereof.

**5.    Seller's Representations, Warranties/No Recourse/As-Is, Where-Is.** Seller makes no representation or warranty, whether expressed, implied, at law or in equity, of any kind or nature with respect to the Loan or Subject Loan Documents except as provided in Section 5.1 of this Agreement. Seller does not otherwise represent, warrant or insure the accuracy or completeness of any information including without limitation any information contained in the subject Loan Documents, or prepared by accountants, engineers, appraisers, environmental consultants or other professionals. Except as provided in Section 5.1 of this Agreement, Seller has not, does not and will not make any representations or warranties with respect to the Loan or Subject Loan Documents, including but not limited to (i) the enforceability or collectability or collectability of any  of the Loan under the Subject Loan Documents, (ii) the perfection, priority of existence of any of Seller's rights in the Collateral, (iii) the existence or nonexistence of any liens (e.g., tax

liens, mechanics liens, judgments lines, etc.) encumbering any portion of the Mortgages Property, for which Seller shall have no obligation or responsibility, or (iv) the value or condition of the Mortgaged Property.

5.1 **Representations and Warranties by Seller**. Seller hereby represents and warrants as follows as of the Effective Date:

5.1.1 **Authority, Enforceability, Etc.** Seller has the requisite power and authority to enter into the transaction contemplated by this Agreement and has obtained all necessary approvals and consents (to the extent requires) to enter into this Agreement and perform its obligations hereunder.

5.1.2 **Title to Subject Loan Documents.** As of the Effective Date, Seller has good title to, and is the sole owner of, the Subject Loan Documents, free and clear of any liens, encumbrances or other charges assessed against Seller.

6. **Certain Obligations of Buyer.** Buyer acknowledges that he has and/or may acquire confidential information from Seller that may include "nonpublic personal information" as that term is defined n 15 U.S.C. 6809 concerning customers and agrees that it will not use nor disclose any such confidential information except for the purposes contemplated by this Agreement or required by law and Buyer shall comply with all statutes or laws related thereof. Both parties to this Agreement confidential and will not, without written consent, divulge any information pertaining to this transaction, including the Purchase Price, except to the extent that it is appropriate or required by law for either party to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

7. **Indemnity.**

7.1 **Indemnity.** Buyer shall indemnify, hold harmless, and defend Seller, its Affiliates and their respective successors, assigns, directors, shareholders, officers, agents and employees (collectively, the *"Seller Indemnified Parties"*) from and against all claims, losses, liabilities (including liabilities to People's Community under the Loan), demands, judgments, awards, court orders, settlements, damages, and obligations of any nature whatsoever ( including reasonable legal fees and expenses) ( collectively, *"Damages"*), which such Seller Indemnified Parties shall receive, suffer or incur arising out of or resulting directly or indirectly from: (i) the Assumed Obligations; or (ii) any Damages asserted against a Seller indemnified Party by a Person other than a Seller Indemnified Party to the extent relating to any action taken or failed to have been taken by Buyer in connection with or relating to the Loan, the Note, or the Mortgage, based upon facts, events or circumstances arising or occurring on or after the Effective Date ( any claim of Damages made by any Seller Indemnified Party under clause (i) or (ii) of this Section 7.1, a *"Third Party Claim"*).

7.2 **Defense of Certain Claims.** Notwithstanding anything to the contrary in this Section 7, if a Third Party claim (i) involves any proceeding brought by any governmental authority, (ii) seeks injunctive relief, (iii) involves a class action, (iv) involves allegations of criminal activities, (v) involves allegations of violations of the Racketeer Influences and Corrupt Organizations Act, 18 U.S.C. Section 1961, et seq., as amended, or any domestic (federal or state) or foreign securities, antitrust, or baking laws or regulations, or (vi) could, in Seller's sole discretion, adversely affect the goodwill or image of Seller to create any material harm to any Seller Indemnified Party, each such Third Party Claim may be defended under the sole control and direction of Seller and Seller's counsel, regardless of whether Buyer is the indemnitor of such Third Party Claim, and, in that event, (a) Seller's defense of such Third Party Claim will be at the sole cost and expense of Buyer, and (b) all Damages arising from such Third Party Claim will be fully paid and satisfied solely by Buyer.

8. **Taxes, Fees and Expenses.**

8.1 Seller and Buyer shall each pay all of their own out-of-pocked expenses in connection with this Agreement, including appraisal, accounting, consulting, professional, and legal fees, if any.

**8.2**     Buyer shall pay all recording, filing or other fees, costs and expenses associated with the sale, transfer and assignment of the Subject Loan Documents, including without limitation the costs and expenses relating to the recording of the assignments of the Mortgage and Assignment of Leases or other instruments applicable to or arising in connection with the transfer, assignment or assumption of the Subject Loan Documents as set forth herein. Buyer hereby agrees to indemnify and hold seller harmless from and against any and all claims, liability, costs and expenses arising out of or in connection with the failure of Buyer to pay any such amount on a timely basis. Seller shall be entitled to require the payment of any such fees, taxes, costs and expenses at or prior to the closing and as a condition thereof.

**9.     Conditions to Closing.**

**9.1**     The obligations of Seller under this Agreement are subject to the satisfaction on and as of the Effective Date of the following condition: Seller shall have received the Purchase Price and arrangements satisfactory to Seller have been made for the payment of the Attorneys and Sheriff Fees.

**9.2**     The obligations of Buyer under this Agreement are subject to the execution and delivery by Seller of the Closing Documents.

**10.     Modification and Waiver.** No modification of any provision of this Agreement shall be binding unless in writing and executed by the party or parties sought to be bound thereby. Performance of or compliance with any covenant given herein or satisfaction of any condition to the obligations of either party hereunder may be waived by the parties to whom such covenant is given or whom such condition is intended to benefit, except as otherwise provided in this Agreement or to the extent any such condition is required by law; provided, that, any such waiver must be in writing.

**11.     Notice to People's Community.** Buyer shall, within Ten (10) Business Days after the Effective Date, and at the sole cost and expense of Buyer, provide notice of the transfers provided for herein to People's Community in a manner as permitted pursuant to the Subject Loan Documents. Buyer affirmatively agrees to cause to be filed all necessary assignments and amendments as necessary in order to effectuate or complete the transaction contemplated within ninety (90) days of the Effective Date ( or as soon as practically possible thereafter). From and after the Effective Date, Seller will provide and forward to Buyer any information, documentation, or notices it receives relating to the Subject Loan Documents, provided, however, Seller will have no liability for failing to do so.

**12.**     Miscellaneous Defined Terms. As used in this Agreement, the following terms shall have the following meanings:

**12.1.1**     *"Affiliates"* shall mean, with respect to any Person, any other Person that directly or indirectly, though one or more intermediaries, controls, in controlled by, or is under common control with, such Person, or a director, officer, joint venture, or other partner, or member of such Person.

**12.1.2**     *"Business Day"* shall mean any day other than a Saturday, Sunday or United States national holiday;

**12.1.3**     *"Collateral"* shall mean property securing the Loan as set forth in the Subject Loan Documents'

**12.1.4**     *"Mortgaged Property"* shall mean the real property subject to the Mortgage;

**12.1.5**     *"Person"* shall mean any individual, partnership, joint venture, corporation, trust, limited liability company, unincorporated organization, government, or other entity.

**13.     Notice of Claim.** Buyer shall immediately notify Seller of any claim, threatened claim, or litigation relating to the Loan that is made or filed against Seller, or any of its successors, assigns, predecessors or affiliates, and which comes to the attention of Buyer.

14.    **Notices.** All notices or deliveries required or permitted hereunder shall be in writing and delivered personally or by facsimile or generally recognized overnight delivery service, and shall be deemed give (a) when delivered, if delivered personally or by facsimile, or (b) on the following business Day, if sent by generally recognized overnight delivery service, in each case to Seller and Buyer at the following Addresses, or such other address as either party may hereafter designate by notice given in compliance with this Section to the other party:


                    **SELLER:**

                    **First NBC Bank**
                    **Kenner Office**
                    **3535 Chateau Boulevard, Suite 19**
                    **Kenner, Louisiana  70065**


                    **BUYER:**

                    **Tyrone Legette**
                    **3427 South Broad Street**
                    **New Orleans, Louisiana  70125**



15.    **Severability.** Each part of this Agreement is intended to be severable. If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

16.    **Binding Effect and Assignment.** This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including any attachments thereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns. Neither party hereto shall assign its rights, title and/or interest to this Agreement, unless the prior written consent of the other party hereto is obtained prior thereto.

17.    **Prior Understandings; Limitation of Damages.** This Agreement supersedes any and all prior discussions and agreements between Seller and Buyer with respect to the purchase of the Subject Loan Documents and other matters contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein. **NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, EACH OF THE PARTIES HERETO, TO THE FULLEST EXTENT PERMITTED BY LAW, IRREVOCABLY WAIVES ANY RIGHTS THAT IT MAY HAVE TO ( COLLECTIVELY, "EXCLUDED DAMAGES") PUNITIVE, SPECIAL, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES IN RESPECT OF ANY LITIGATION BASED UPON, OR ARISING OUT OF, THIS AGREEMENT OR ANY RELATED AGREEMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS OR ACTIONS OF ANY OF THEM RELATING THERETO EXCEPT SOLELY WITH REGARD TO DAMAGES SUFFERED BY A SELLER INDEMNIFIED PARTY IN RESPECT OF A THIRD PARTY CLAIM. IN ADDITION, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, AS A SPECIFICALLY BARGAINED-FOR-INDUCEMENT FOR SELLER TO ENTER INTO THIS AGREEMENT, BUYER EXPRESSLY AGREES THAT, TO THE FULLEST EXTENT PERMITTED BY LAW, SELLER'S AGGREGATE LIABILITY TO BUYER IN RESPECT OF ANY AND ALL MATTERS ARISING OUT OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, ANY ONE OR MORE CLAIMED BREACHES OF THIS AGREEMENT BY SELLER, SHALL IN NO EVENT EXCEED THE AMOUNT OF THE PURCHASE PRICE.**

**18.    Choice of Law.** This Agreement and claims arising out of or in connection therewith shall be governed by and construed and enforced in accordance with the laws of the State of Louisiana and Buyer consents to Jurisdiction in the federal or state courts situated in Jefferson Parish, Louisiana.

**19.    Jury Waiver. EACH OF THE PARTIES HEREBY WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY PROCEEDINGS OR LITIGATION BROUGHT AGAINST THE OTHER OF THEM WITH RESPECT TO THIS AGREEMENT.**

**20.    Counterparts.** This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by each of the parties. The transmission of an executed copy of this Agreement by fax in the manner hereby contemplated shall be deemed to constituted execution and delivery of an original executed copy.

**21.    Interpretation.** Section titles and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation hereof. The exhibits referred to herein shall be construed with and as an integral part of this Agreement to the same extent as if they were set forth verbatim herein. As used herein, "include," "includes," and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import; "writing," "written" and comparable terms refer to printing, typing, lithography and other means of reproducing words in a visible form; references to a person are also to its successors an assigns; except as the context may otherwise requires, "hereof," "herein," "hereunder" and comparable terms refer to the entirety hereof and not to any particular article, section or other subdivision hereof or attachment hereto; references to any gender include the other; except as the context may otherwise require, the singular includes the plural and vice versa; references to any agreement or other document are to such agreement or document as amended and supplemented from time to time; references to "Article," "Section," or another subdivision or to an "Exhibit" are to an article, section, or subdivision hereof or an "Exhibit." The parties acknowledge that each party and its counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation, construction and reinforcement of this Agreement or any amendment or Exhibit hereto.

**22.    No Third Party Beneficiaries**. The parties hereto intend that this Agreement shall not benefit or create nay right or cause of action in or on behalf of any person other than the parties hereto. No future or present employee or customer of either of the parties nor their Affiliates, successors or assigns or other person shall be treated as a third party beneficiary in or under this Agreement.

**23.    Certain Post-Closing Claims**. If, in any instance after the Effective Date, Seller in required to disgorge, to a trustee in bankruptcy, a receiver or any similar party, any payments it received on the loan prior to the Effective Date, Buyer will cooperate with Seller to facilitate the filing of acclaim by or on behalf of Seller to recover the disgorged amount, provided that Seller pays any actual and reasonable costs incurred by Buyer in connection therewith. Buyer and Seller acknowledge that, notwithstanding anything to the contrary contained in this Agreement, Seller shall be entitled to any and all proceeds resulting from any such claim.

**THIS NOTE PURCHASE AND ASSUMPTION AGREEMENT IS EXECUTED AS OF THE EFFECTIVE DATE.**

**BUYER:**                                        **SELLER:**

**TYRONE LEGETTE**                      **FIRST NBC BANK**

**By:** _____      **By:** _____

                                                    **Name:** _____

                                                    **Title:** _____

## EXHIBIT A

## FORM OF ALLONG TO PROMISSORY NOTE

Allonge to Promissory Note

Allonge endorsement affixed and attached to the Promissory Note dated November 20, 2014, in the original principal sum of $2,000,000.00, or such lesser sum as may actually be advanced by the lender thereunder from time to time, executed by People's Community Subsidiary, Inc., payable to First NBC Bank.

Pay to the order of Tyrone Legette, ("Assignee"), without recourse, representations or warranties, except as set forth in that certain Note Purchase and Assumption Agreement dated as of July 15, 2016, by and between First NBC Bank, and Assignee.

Effective as of this 15th day of July, 2016.

By: _____

Name: _Fred r, Beeba_

Title: _S. v, P._

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

The foregoing instrument was acknowledged before me this 15th day of July, 2016, by _Fred V. Beebe_ , _Sr. Vice President_ of First NBC Bank.

_____

**DONALD B. HINGLE, JR.**
**NOTARY PUBLIC**

## EXHIBIT B

### FORM OF ASSIGNMENT OF SUBJECT LOAN DOCUMENTS

Assignment of Promissory Note, Multiple Indebtedness Mortgage, and Assignment of Leases and Rents

**BE IT KNOWN**, that before the undersigned Notary Public, duly commissioned and qualified and in the presence of the undersigned competent witnesses, came and appeared First NBC Bank, (*"Assignor"*), who declared as follows:

This Assignment of Promissory Note, Multiple Indebtedness Mortgage, and Assignment of Leases of Leases and Rents (*"this Assignment"*), is executed and delivered by Assignor to Tyrone Legette (*"Assignee"*) pursuant to, and in furtherance of the arrangements provided for in, that certain Note Purchase and Assumption Agreement by and between Assignor, as seller, and Assignee, as buyer, dated July 1, 2016 (the *"Agreement"*).

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby sells, transfers and assigns to Assignee, in respect of the Loan (as defined in the Agreement), the documents identified on Exhibit A, attached hereto, without recourse, representation or warranty, except as provided for in the Agreement.

**THE SALES, TRANSFERS AND ASSIGNMENTS PROVIDED FOR HEREIN ARE EXPRESSLY SUBJECT, IN ALL RESPECTS, TO THE TERMS AND PROVISIONS OF THE AGREEMENT, WHICH ARE INCORPORATED HEREIN BY THIS REFERENCE.**

This Assignment shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

**IN WITNESS WHEREOF**, Assignor has executed this Assignment of Promissory Note, Multiple Indebtedness Mortgage and Assignment of Leases and Rents effective as of July 15, 2016, before the undersigned Notary Public and witnesses on this 15th day of July, 2016.

**WITNESSES**

_____
Diogenes Payes

_____
JASON G. PICONE

**FIRST NBC BANK**

By: _____

Name: _Fred M. Berlin_

Title: _S. V. P._

STATE OF LOUISIANA

PARISH OF JEFFERSON

SWORN TO AND SUBSCRIBED before me, Notary Public, this 15th day of July, 2016.

_____
DONALD B. HINGLE, JR.
NOTARY PUBLIC

**EXHIBIT A**

Promissory Note in the principal amount of $2,000.000.00, or such lesser sum as may actually be advanced by the lender thereunder from time to time, dated November 20, 2014, by People's Community Subsidiary, Inc., in favor of Assignor.

Multiple Indebtedness Mortgage, dated September 27, 2013, granted by People's Community Subsidiary, Inc., to Assignor and recorded on September 30, 2013, as Instrument No. 11348601, MOB 4591, folio 647, Official Records of Jefferson Parish, Louisiana.

Assignment of Leases and Rents, dated September 27, 2013, granted by People's Community Subsidiary, Inc., to Assignor and recorded on September 30, 2013, as Instrument No. 11348601, MOB 4591, folio 649, Official Records of Jefferson Parish, Louisiana.

Business Loan Agreements, dated September 27, 2013 and November 20, 2014 respectively.

Commercial Security Agreement, dated November 20, 2014.

Acknowledgment of Existing Multiple Indebtedness Mortgage, dated November 20, 2014.

Commercial Guaranties executed by Tyrone Legette, individually and Legette Construction, Inc., dated September 27, 2013 and November 20, 2014 respectfully.